Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000348
21-FEB-2020
07:45 AM

NO. CAAP-16-0000348

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


FRANCIS FOO, RUBY FOO AND VERA YOKOI,
Plaintiffs/Counterclaim Defendants-Appellants,
v.
RICHARD L. BONER, as Trustee of the RICHARD L. BONER TRUST,
Defendant/Counterclaimant-Appellee,
and
DONALD E. MCBRYDE; ANNE M. MCBRYDE,
Defendants-Appellees,
and
JOHN DOES 1-50; JANE DOES 1-50;
DOE PARTNERSHIPS 1-50; DOE CORPORATIONS 1-50;
DOE GOVERNMENTAL AND OTHER ENTITIES 1-50,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 14-1-196K)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

In this appeal arising out of a quiet title action,
Plaintiffs-Appellants Francis Foo, Vera Yokoi, and Ruby Foo
(collectively **the Foos**) appeal from a "Final Judgment" filed on
March 28, 2016, entered pursuant to an "Order Granting
Defendant/Counterclaimant Richard L. Boner, as Trustee of the
Richard L. Boner Trust's Motion for Summary Judgment [Filed April
13, 2015] and Defendants Donald E. McBryde and Anne M. McBryde's
Separate Motion for Summary Judgment against Plaintiffs Francis

Foo and Vera Yokoi [Filed April 13, 2015]" (**Order Granting Summary Judgment**), filed on September 11, 2015, by the Circuit Court of the Third Circuit (**Circuit Court**).[1] The Final Judgment was entered in favor of Defendant-Appellee Richard L. Boner, as Trustee of the Richard L. Boner Trust (**Boner**) and Defendants-Appellees Donald E. McBryde and Anne M. McBryde (collectively, **the McBrydes**).

In their sole point of error, the Foos assert on appeal that:

> The Trial Court Erred In Granting Summary Judgment For The Defendants On Plaintiffs' Claim For Adverse Possession When Plaintiffs Presented Evidence Of Hostile Intent, i.e. Enclosing Disputed Land Area, And Using It To The Exclusion Of All Others, And Plaintiff's Evidence Was Unrefuted By Any Admissible Evidence.

We conclude the Circuit Court correctly granted summary judgment and therefore affirm.

## I. Background

This appeal arises out of a dispute over the ownership of a 3,383-square-foot parcel of land (**subject property**) situated between two adjacent residential properties, Lot 61-C and Lot 61-D. Boner and the McBrydes have an interest in Lot 61-C.[2] The Foos have an interest in Lot 61-D.[3] The Foos allege that since Francis Foo's parents purchased Lot 61-D in 1960, a stone wall and fence running parallel between the two properties demarcated the subject property as part of Lot 61-D. Boner and the McBrydes in turn contend that the subject property is situated within the legal boundaries of Lot 61-C, and that there is no evidence that

---

[1] The Honorable Ronald Ibarra presided over all relevant matters pertaining to the Order Granting the Motions for Summary Judgment. The Honorable Melvin H. Fujino entered the Final Judgment.

[2] The McBrydes are the former owners of Lot 61-C. The McBrydes conveyed legal title to Lot 61-C to Boner on August 30, 2013. The McBrydes were subsequently included as a party to the current action because the Foos indicated that the McBrydes may have a continued interest in Lot 61-C due to a mortgage conveyed by Boner to the McBrydes.

[3] The Foos allegedly received legal title to Lot 61-D on June 1, 2011 from successor trustee, Tamio Iwada.

the Foos or their predecessors obtained ownership of the subject property by adverse possession.

On May 16, 2014, Francis Foo and Vera Yokoi filed a "Complaint for Quiet Title and Damages" (**Complaint**) asserting, *inter alia*, that they have been in actual, open, notorious, hostile, continuous and exclusive possession of the subject property pursuant to Hawaii Revised Statutes (**HRS**) § 669-1 (2016).[4] On August 4, 2014, Francis Foo and Vera Yokoi filed their "First Amended Complaint to Quiet Title and for Damages" (**First Amended Complaint**), which, *inter alia*, substituted Richard L. Boner, Trustee of the Richard L. Boner Trust as a party defendant in place of Richard L. Boner, and added the McBrydes as party defendants.

On August 18, 2014, Boner filed an answer and counterclaims to the First Amended Complaint.[5] On September 23, 2014, the McBrydes filed their answer to the Foos' First Amended Complaint.

---

[4] In the Foos' Complaint, they generally cite to "H.R.S. Chapter 669". However, the applicable statute is HRS § 669-1, which provides in relevant part:

§669-1 Object of action. . . . .
(b) Action for the purpose of establishing title to a parcel of real property of five acres or less may be brought by any person who has been in adverse possession of the real property for not less than twenty years. Action for the purpose of establishing title to a parcel of real property of greater than five acres may be brought by any person who had been in adverse possession of the real property for not less than twenty years prior to November 7, 1978, or for not less than earlier applicable time periods of adverse possession. For purposes of this section, any person claiming title by adverse possession shall show that such person acted in good faith. Good faith means that, under all the facts and circumstances, a reasonable person would believe that the person has an interest in title to the lands in question and such belief is based on inheritance, a written instrument of conveyance, or the judgment of a court of competent jurisdiction.

[5] On January 12, 2016, the Circuit Court entered a "Stipulation for Dismissal with Prejudice Defendant/Counterclaimant Richard L. Boner, Trustee's Counterclaims Pursuant to Rule 41(a)(1)(B) of the Hawaii Rules of Civil Procedure".

On April 13, 2015, Boner and the McBrydes filed separate motions for summary judgment, and joined in each other's motions. On April 24, 2015, Francis Foo and Vera Yokoi filed their opposition to Boner and the McBrydes' motions for summary judgment. On April 28, 2015, the McBrydes and Boner filed their reply memoranda for the motions. On May 22, 2015, the Foos filed a "Second Amended Complaint to Quiet Title and for Damages" (**Second Amended Complaint**) pursuant to a stipulation between the parties to add Ruby Foo as a party plaintiff and the Circuit Court's "Rule 19 Order".[6]

On July 16, 2015, the Circuit Court held a hearing on the motions for summary judgment.[7] At the hearing, the Circuit Court orally granted Boner and the McBryde's motions for summary judgment, specifically stating that it found no genuine issue of material fact with respect to the hostile possession element of the Foos' adverse possession claim.

On September 11, 2015, the Circuit Court entered the Order Granting the Motions for Summary Judgment. In its Order, the Circuit Court stated in relevant part:

> 1. Defendant Boner's Motion and Defendants McBryde's Motion are GRANTED.
> 2. The Court finds that there is no admissible evidence indicating that Plaintiffs Foo can prove by clear and convincing evidence each element necessary to establish adverse possession.
> 3. The Court specifically finds that Plaintiffs Foo have failed to present any evidence to establish hostile possession by Plaintiffs Foo, or that their claim was made in good faith as that term is defined in Hawaii Revised Statute Section 669-1(b).

On March 28, 2016, the Circuit Court entered the Final Judgment. This appeal follows.

---

[6] The parties stipulated to the applicability of the previously filed motions for summary judgment to Ruby Foo.

[7] The Circuit Court held a prior hearing on Boner and the McBrydes' motions for summary judgment on May 1, 2015, however it deferred the hearing until after Ruby Foo could be added as a party.

4

## II. Standard of Review

"On appeal, the grant or denial of summary judgment is reviewed de novo." Ralston v. Yim, 129 Hawai'i 46, 55, 292 P.3d 1276, 1285 (2013) (internal quotation marks omitted) (citing First Ins. Co. of Hawai'i v. A&B Props., Inc., 126 Hawai'i 406, 413, 271 P.3d 1165, 1172 (2012)). The standard for summary judgment is well-settled:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 55-56, 292 P.3d at 1285-86 (brackets and citation omitted).

## III. Discussion

The Foos contend the Circuit Court erred in granting Boner and the McBrydes' motions for summary judgment because the Foos presented evidence of hostile possession to support their adverse possession claim.

"In order to establish title to real property by adverse possession, a claimant 'must bear the burden of proving by clear and positive proof each element of actual, open, notorious, hostile, continuous, and exclusive possession for the statutory period.'" Petran v. Allencastre, 91 Hawai'i 545, 556, 985 P.2d 1112, 1123 (App. 1999) (brackets, citation, and footnote omitted). "The burden of 'clear and positive proof' derives from the long-observed proposition that 'adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner.'" Morinoue v. Roy, 86 Hawai'i 76, 81, 947 P.2d 944, 949 (1997) (brackets omitted) (quoting Territory v. Pai-a, 34 Haw. 722, 726 (Haw. Terr. 1938)).

As the summary judgment movants, Boner and the McBrydes bore the initial burden of demonstrating that there was no genuine issue of material fact as to the Foos' adverse possession claim. See Ralston 129 Hawai'i at 56, 292 P.3d at 1286. Boner and the McBrydes could satisfy their burden by either negating an essential element of the Foos' adverse possession claim or demonstrating that the Foos would be unable to satisfy their burden at trial. See id. at 57, 292 P.3d at 1287 (holding that "where the non-movant bears the burden of proof at trial, a movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial"). If Boner and the McBrydes satisfied their initial burden, "the burden shift[s] to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Id. at 57-58, 292 P.3d at 1286-87.

We conclude that the Circuit Court did not err in granting Boner and the McBrydes' motions for summary judgment because they carried their initial burden, and there are no genuine issues of material fact, that they have negated the element of hostile possession, which is required for the Foos' adverse possession claim. Moreover, Boner and the McBrydes also established that the Foos and their predecessors never possessed the subject property for the required statutory period.

## A.   Hostile Possession

The Hawai'i Supreme Court recognizes that "[t]he element of hostility is satisfied by showing possession for oneself under a claim of right, and such possession must import a denial of the owner's title." Wailuku Agribusiness Co. Inc. v. Ah Sam, 114 Hawai'i 24, 33, 155 P.3d 1125, 1134 (2007) (citations, brackets and internal quotation marks omitted).

In support of their motions for summary judgment, Boner and Donald McBryde submitted, *inter alia*, declarations attesting to their personal observations of the subject property, including their observation of the Foos' failure to use or possess the subject property under a claim of right in such a way that denied the owner's title. The Declaration of Donald McBryde states, in relevant part:

> 3. In 1997 I purchased Lot 61C which includes 10,469 square feet of real property, and is inclusive of the 3,383 square feet of real property claimed by Plaintiffs herein ("subject property").
>
> 4. Since 1997 the subject property has been completely overgrown with weeds.
>
> . . . .
>
> 7. During the time that I owned the subject property, neither the Plaintiffs, nor their predecessors stated to me that they claimed or owned the subject property.
>
> 8. From 1997 through August 30, 2013, when I sold the subject property to Mr. Boner, neither the Plaintiffs nor their predecessors ever cleared or attempted to clear, or maintained, or attempted to maintain the subject property.
>
> 9. During the time that I owned the subject property, on several occasions I had my manager remove the Plaintiffs' tenant's parked cars from the subject property.
>
> 10. During the entire time that I owned the subject property, neither the Plaintiffs, nor their predecessors cleared or attempted to clear, planted or attempted to plant, constructed or attempted to construct, any improvements, plants and or landscaping on the subject property.

Similarly, Boner submitted a declaration in which he attests in relevant part:

> 4. On August 30, 2013, I purchased Lot 61-C which includes 10,469 square feet of real property and includes 3,383 sq. feet of real property claimed by Plaintiffs ("subject property").
>
> 5. Since 1997, I observed the subject property as I owned property located directly across the street from the subject property.
>
> 6. Since 1997, the subject property has been vacant and unimproved, with rock piles and overgrown with weeds[.]
>
> 7. The Plaintiffs did not state to me that they owned the subject property until last year when I removed hog wire and a pile of rocks.

8. Since 1994 to the present, the Plaintiffs and their predecessors have never cleared, or performed any type of maintenance to the subject property that would provide notice that they owned the subject property.

9. Since the time of my purchase of the subject property, 2013, I have paid all of the County of Hawaii Real Property Taxes due and owing for the subject property.

These declarations address the time period going back to 1997 and provide evidence that the Foos did not assert any possession adverse to Boner or the McBrydes over the subject property during that time period. See Thomas v. State, 55 Haw. 30, 31-32, 514 P.2d 572, 574-75 (1973) (holding that claimant's improvements and construction of houses, sheds, and garages on subject property, and use of subject property to store automobiles, firewood, tools, etc., may constitute hostile use adverse to owner's title).

Answers to interrogatories by Francis Foo and Vera Foo Yokoi also support summary judgment in favor of Boner and the McBrydes. The interrogatory responses establish that the Foos claim they took title by adverse possession based on a wall and fence. However, the interrogatory responses also establish the only times the Foos or their predecessors communicated with an owner of Lot 61-C and claimed legal ownership of the subject property were in communications with Boner in August 2013, which is when Boner began to take down hog wire and the stone wall. The answers to interrogatories also establish the Foos and their predecessors never notified the County of Hawaii that they claimed legal title to the subject property, and that they never paid real property taxes for the subject property.

The record also contains a certified copy of a quitclaim deed dated June 1, 2011 (**2011 Quitclaim Deed**), executed by Tamio Iwado, "Successor Trustee under that Certain Unrecorded Declaration of Trust Dated April 15, 1983, as amended, made by Evelyn S. Foo, as Settlor and Trustee", which conveyed legal

8

title for Lot 61-D to the Foos.[8]  The quitclaim deed did not include, mention, or describe the subject property as part of Lot 61-D.  As noted by the Circuit Court at the hearing on Boner and the McBrydes' motions for summary judgment, such omission in the quitclaim deed indicates that the Foos and their predecessors did not claim or treat the subject property as their own, thus weakening their claim of hostile possession.  See Okuna v. Nakahuna, 60 Haw. 650, 656, 594 P.2d 128, 132 (1979) (holding that a claimant who has failed to list disputed property as part of the estate of deceased father, maintain property as improved by former tenant, or pay taxes on disputed property over a long period of time has failed to establish requisite element of hostility by clear and positive proof).

Taken together, the evidence produced in support of Boner and the McBrydes' motions for summary judgment showed that the Foos had not established possession of the subject property under a claim of right, or that their alleged possession imported a denial of Boner, the McBrydes, or any preceding owner's title to the subject property.  In short, the summary judgment movants met their initial burden to show that there was no hostile possession of the subject property.

In opposing summary judgment, the Foos asserted they could show hostile possession based on the existence of a stone wall and fence.[9]  At the hearing on the summary judgment motions, the Circuit Court specifically asked the Foos what they relied on

_____

[8]  The quitclaim deed was recorded in the State of Hawai'i Bureau of Conveyances on May 21, 2012.  No party challenged the admissibility of this deed in the Circuit Court or in this appeal.  See Price v. AIG Hawai'i Ins. Co., 107 Hawai'i 106, 112, 111 P.3d 1, 7 (2005).  At the hearing on the summary judgment motions, the Foos' counsel did not dispute that the Foos were not the legal owners of the subject property and, when asked by the Circuit Court about the 2011 Quitclaim Deed not including the subject property, did not dispute that the deed did not include the subject property.

[9]  The Foos assert that a presumption of hostile possession arises when all other elements of adverse possession are satisfied.  Wailuku Agribusiness Co., Inc., 114 Hawai'i at 34, 155 P.3d at 1135.  However, as discussed infra, the Foos also failed to raise a genuine issue of material fact that they and their predecessors possessed the subject property for the required statutory period.  Thus, they cannot rely on a presumption of hostile possession here.

to show hostility and possession, to which the Foos responded "the wall and the fence[.]" In his declaration opposing summary judgment, Francis Foo attests that when his family moved onto the property in 1961, "the property including the disputed portion was bordered by a stonewall and 4 feet high hog wire fence. The historical stonewall/fence ran about 75 feet parallel to both Lot 61-D and 61-C[.]" Francis Foo further attests that "[i]t is evident that when the stonewall and fence were constructed, an apparent mistake was made in thinking that the historical stonewall demarcated the boundary."[10] Attached to Francis Foo's declaration are photographs of the wall before it was taken down in 2013. We note, however, that the Foos did not contest the evidence in the declarations of Boner and Donald McBryde that since 1997, the Foos had not cleared, maintained, or attempted to maintain the subject property, and had not planted or constructed anything on the subject property. The Foos also did not contest the evidence in Donald McBryde's declaration that on several occasions while he owned Lot 61-C, which was between 1997 and 2013, he had his manager "remove the Plaintiffs' tenant's parked cars from the subject property."

In light of all the evidence in this case, we agree with the Circuit Court that the existence of the stone wall and fence alone did not create a genuine issue of material fact as to the element of hostile possession. See, e.g., Lai v. Kukahiko, 58 Haw. 362, 364-67, 569 P.2d 352, 354-56 (1977) (concluding that evidence of "raising cattle and pigs and planting taro, pineapple, sugar cane, and other vegetables" on the subject property was sufficient to support claimant's adverse possession claim, including hostile possession); Thomas, 55 Haw. at 31-32,

_____

[10] In his declaration, Francis Foo also attests that Boner and the McBrydes' predecessors to Lot 61-C "knew that a stone wall and hog wire fence determined the boundary between the two properties[.]" Such statement, however, is speculation as there is no indication that it was based on Francis Foo's personal knowledge. Moreover, to the extent that Foo's declaration attests that a "No Trespassing" sign was posted "[o]n the property", his declaration does not indicate who posted the sign, when it was posted, or where on the property it was posted.

10

514 P.2d at 574-75 (holding that claimant's improvements and construction of houses, sheds, and garages on subject property, and use of subject property to store automobiles, firewood, tools, etc., may constitute hostile use adverse to owner's title); Gomes v. Upchurch, 50 Haw. 125, 126, 432 P.2d 890, 891-92 (1967) (concluding that claimant established adverse possession claim, including hostile possession, where claimants continuously maintained stonewall to preserve its effectiveness as a cattle barrier, made substantial improvements to property, used property as a "fattening pen" annually, and constructed water pipeline system through property); Paki v. Saffery, 29 Haw. 250, 251-54 (Haw. Terr. 1926) (concluding that clearing the subject property, building structures on the subject property, erecting a fence around the subject property, cultivating the subject property, and digging a well thereon was sufficient to establish adverse possession claim, including hostile possession).

The Foos argue that neither Boner nor Donald McBryde's declarations address the ten-year period between 1960-1970, which the Foos claim was the applicable statutory period that their predecessors had adversely possessed the subject property. However, the Foos' conduct subsequent to the expiration of the alleged statutory period is relevant to determine whether their prior alleged adverse possession was in fact hostile. See Okuna, 60 Haw. at 656 n.5, 594 P.2d at 132 n.5 (holding that "[claimant's] conduct subsequent to the expiration of the statutory period of limitations, while not enough to defeat title already acquired by adverse possession, is evidence to be considered in determining whether the prior possession of [claimant] was in fact hostile"). Here, the evidence establishes that the Foos never maintained or improved the subject property since at least 1997, and the Foos never claimed to own the property until a hog wire fence and stone wall were taken down in 2013. This evidence was relevant to show that any alleged adverse possession of the subject property by the Foos' predecessors during 1960-1970 was not hostile. Id.

11

Further, in his declaration, Francis Foo attests that his family only resided in the house constructed on Lot 61-D from 1961-1962, upon which the house was rented to tenants. Francis Foo does not indicate what use, if any, the Foos' tenants made of the subject property from 1962-1970. We also note that Francis Foo's statement in his declaration that his family used the "large back yard of Lot 61-D" does not establish hostile possession of the subject property.

### B. Possession for the Statutory Period

"The statutory period for establishing title to real property by adverse possession was ten years between 1898 and 1973." Petran, 91 Hawai'i at 556 n.23, 985 P.2d at 1124 n.23 (citations omitted). "Although the period was extended to twenty years in 1973, this change did not affect 'rights that had already matured' prior to that date." Id. (citations omitted). In their opposition to Boner and the McBrydes' motions for summary judgment, the Foos argued that they satisfied the element of possession for the statutory period based on their predecessors' usage of the subject property between 1960 and 1970.[11] We disagree.

In Francis Foo's declaration, in addition to the stone wall and hog wire fence, he attests that:

> 11. The Foos cultivated the land and did yard maintenance up to the stonewall/fence. A large stone wall planter was constructed on the northwest boundary of the lot and which went up to the stone wall dividing the two lots.

> 12. The Foos continued to maintain the home and its surrounding yard. They also, on a yearly basis, for several years, held a family and friends luau at the new house. They used a large back yard of Lot 61-D to kalua the pig in the ground; the Foos' also build [sic] in the back yard a cage that was used as a temporary holding for the live pigs before slaughtering them.

---

[11] While the Foos also appeared to assert that they could also meet the twenty-year statutory period, they did not present any additional facts or evidence supporting such claim in their opposition to Boner and the McBrydes' motion for summary judgment.

13. Coconut trees were planted on the property one of which is now in the disputed area.

14. Declarant recalls helping his parents at times keep the yard maintained up to the wall. At one point the Foos planted some ti-leaf plants along the stone wall. Francis Foo, Sr. would use it to do imus to make kalua pig and lau lau.

However, at no point in his declaration did Francis Foo indicate when he or his family started to use the subject property for these alleged purposes. Likewise, at the hearing on Boner and the McBrydes' motions for summary judgment, the Foos could not indicate when their alleged use of the subject property began, only that their usage occurred sometime during 1960-1970. Without such evidence, there is no genuine issue of material fact that the Foos possessed or used the property for the alleged statutory period.

"Mere claim of title without express proof of actual possession for the statutory period is ineffective." In re Real Prop. Situate at Moiliili, Waikiki-Waena, City & Cty. of Honolulu, 49 Haw. 537, 553, 425 P.2d 83, 93 (1967) (emphasis added) (citation omitted). Here, the Foos' claim of actual possession for the statutory period relies on the year that they allege Francis Foo Sr. and his wife (predecessor owners) purchased Lot 61-D, the existence of a pre-existing stone wall and fence, and their vague allegations of use of the subject property during an unspecified time period. We cannot say that such evidence creates a genuine issue of material fact regarding possession of the subject property for the required statutory period, alleged by the Foos to be between 1960-1970. Cf. Morinoue, 86 Hawai'i at 81-82, 947 P.2d at 949-50 (declarant's claim that the claimants and their predecessors had planted and tended to trees on the property since 1924 was too vague and insufficient as a matter of law to establish that the claimant's "made use of the land to such an extent and in such a manner as to put the world on notice by means so notorious as to attract the attention of every adverse claimant.") (internal quotation marks and citation omitted).

13

Accordingly, we conclude that the Circuit Court did not err in its Order Granting Summary Judgment.

### IV. Conclusion

Based on the foregoing, the "Final Judgment" entered by the Circuit Court of the Third Circuit on March 28, 2016, is affirmed.

DATED: Honolulu, Hawai'i, February 21, 2020.

On the briefs:

Gary G. Grimmer,
Ann Correa,
for Plaintiffs/Counterclaim
Defendants-Appellants.

Lisa Strandtman,
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

14